## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEE CLARK, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>AMNEAL PHARMACEUTICALS, LLC,<br><br>             Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Renee Clark ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Amneal Pharmaceuticals, LLC ("Amneal" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1. This is a class action lawsuit regarding Amneal's manufacturing of ranitidine-based prescription medications that contain dangerously high levels of N-nitrosodimethylamine ("NDMA"), a carcinogenic and liver-damaging impurity.

2. Ranitidine is an over-the-counter and prescription medication that is designed to decrease the amount of acid created by the stomach. Ranitidine is intended to be used for the treatment of heartburn associated with indigestion and sour stomach. However, Amneal's manufacturing process has caused its ranitidine medications to contain dangerously high levels of NDMA.

3. NDMA is a semivolatile organic chemical. According to the U.S. Environmental Protection Agency, NDMA "is a member of N-ni-trosamines, a family of potent carcinogens."

While NDMA is not currently produced in the United States other than for research purposes, it was formerly used "in production of liquid rocket fuel," among other uses. NDMA is listed as a "priority toxic pollutant" in federal regulations. *See* 40 CFR § 131.36. Exposure to NDMA can cause liver damage and cancer in humans. NDMA is classified as a probable human carcinogen, and animal studies have shown that "exposure to NDMA has caused tumors primarily of the liver, respiratory tract, kidney and blood vessels."

4. On September 13, 2019, the FDA issued a statement announcing the presence of NDMA in ranitidine-containing medications.[1] The FDA's notice states that "NDMA is classified as a probable human carcinogen (a substance that could cause cancer) based on results from laboratory tests." Since then, the FDA's own testing "has found unacceptable levels of NDMA in samples of ranitidine."[2]

5. Further, on April 1, 2020, the FDA requested that all ranitidine "manufacturers to withdraw all prescription and over-the-counter (OTC) ranitidine drugs from the market immediately."[3] This decision was made because FDA "determined that the impurity in some ranitidine products increases over time and when stored at higher than room temperatures may

---

[1] Food & Drug Admin., Statement Alerting Patients and Health Care Professionals of NDMA Found in Samples of Ranitidine (Sept. 13, 2019), https://www.fda.gov/news-events/press-announcements/statement-alerting-patients-and-health-care-professionals-ndma-found-samples-ranitidine.

[2] Food & Drug Admin., 10/2/19: UPDATE – FDA Provides Update on Testing of Ranitidine for NDMA Impurities (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[3] Food & Drug Admin., All Ranitidine Products (Zantac): Press Release – FDA Requests Removal (Apr. 1, 2020), https://www.fda.gov/safety/medical-product-safety-information/all-ranitidine-products-zantac-press-release-fda-requests-removal?utm_campaign=FDA%20MedWatch%20-%20All%20Ranitidine%20Products%20%28Zantac%29&utm_medium=email&utm_source=Eloqua (last accessed Apr. 21, 2020).

result in consumer exposure to unacceptable levels of this impurity."[4]

6.     On November 8, 2019, Amneal announced the recall of Ranitidine Tablets, USP,

150 mg and 300 mg, and Ranitidine Syrup (Ranitidine Oral Solution, USP), 15 mg/mL, because

of potential N-Nitrosodimethylamine (NDMA) amounts above levels established by the FDA."[5]

Amneal has instructed consumers to cease using recalled ranitidine medications.[6]

### A.     Amneal Markets Its Ranitidine Medications As Safe

7.     Amneal marketed its ranitidine medications as safe and effective products.

8.     On Amneal's website page for its generic medications, Amneal touts that it

"deliver[s] quality, trust, and value."

9.     Amneal also notes that "for close to 20 years [consumers] have associated the

Amneal name with an unwavering commitment to quality, service, and value."

10.     In short, when consumers purchase or are prescribed ranitidine medications

manufactured by Amneal, they expect that the medications will be safe and effective for the

purpose for which it is purchased.  They do not expect, and Defendant does not disclose, that the

medications contain the harmful impurity NDMA.

### B.  Amneal's Ranitidine Medications Contain Dangerous Levels Of NDMA

11.     Contrary to the above assertions, Amneal's ranitidine medications contain

dangerously high levels of NDMA that would not be present if the medications were properly

---

[4] *Id.*

[5] Food & Drug Admin., Amneal Pharmaceuticals, LLC. Issues Voluntary Nationwide Recall of Ranitidine Tablets, USP, 150mg and 300mg, and Ranitidine Syrup (Ranitidine Oral Solution, USP), 15 mg/mL, Due to Possible Presence of N-nitrosodimethylamine (NDMA) Impurity (Nov. 22, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/amneal-pharmaceuticals-llc-issues-voluntary-nationwide-recall-ranitidine-tablets-usp-150mg-and-300mg (last accessed Apr. 21, 2020).

[6] *Id.*

synthesized.  As noted in paragraph 4 and 5, *supra*, the FDA has found unacceptable levels of NDMA in samples of ranitidine.

12.     Further, on April 1, 2020, the FDA requested that all ranitidine "manufacturers to withdraw all prescription and over-the-counter (OTC) ranitidine drugs from the market immediately."[7]  This decision was made because the FDA "determined that the impurity in some ranitidine products increases over time and when stored at higher than room temperatures may result in consumer exposure to unacceptable levels of this impurity."[8]

13.     The Medicines and Healthcare Products Regulatory Agency of the United Kingdom has issued an alert regarding ranitidine medications, noting recalls issued by companies are "a precautionary measure due to possible contamination of the active substance in Zantac, ranitidine, with an impurity called NDMA."[9]  "The MHPRA has asked manufacturers to quarantine all ranitidine products which may contain the active pharmaceutical ingredient that is potentially affected by this issue."[10]

14.     While the cause of the NDMA contamination in ranitidine medications is still being investigated by the FDA and other regulatory agencies.  However, the Health Products Regulatory Authority of Ireland, in issuing a recall of ranitidine medications, has stated: "The

---

[7] Food & Drug Admin., All Ranitidine Products (Zantac): Press Release – FDA Requests Removal (Apr. 1, 2020), https://www.fda.gov/safety/medical-product-safety-information/all-ranitidine-products-zantac-press-release-fda-requests-removal?utm_campaign=FDA%20MedWatch%20-%20All%20Ranitidine%20Products%20%28Zantac%29&utm_medium=email&utm_source=Eloqua (last accessed Apr. 21, 2020).

[8] *Id*.

[9] Medicine and Healthcare Regulatory Agency, Zantac – MHRA Drug Alert Issued as GlaxoSmithKline Recalls all Unexpired Stock (Oct. 8, 2019), https://www.gov.uk/government/news/zantac-mhra-drug-alert-issued-as-glaxosmithkline-recalls-all-unexpired-stock (last accessed Apr. 21, 2020).

[10] *Id*.

reason for the recall is that a nitrosamine impurity has been identified in ranitidine active substance batches manufactured at a manufacturing site in India."[11]

15. The "FDA has set the acceptable daily intake limit for NDMA at 0.096 micrograms or 0.32 ppm [parts per million] for ranitidine"[12] But Amneal's ranitidine medications, according to testing by the FDA, have an NDMA content of 0.52-2.17 ppm, significantly more than the acceptable daily limit for NDMA:

| Company | Product | Lots Tested | NDMA level ppm |
|---|---|---|---|
| Amneal Pharmaceuticals | Ranitidine 300mg | AR181795A, AR190878A, AR190876A, AR191177A, HB05819, HB06119, HL08718 | 0.52-2.17 |

16. Further, on April 1, 2020, the FDA requested that all ranitidine "manufacturers to withdraw all prescription and over-the-counter (OTC) ranitidine drugs from the market immediately."[13] This decision was made because FDA "determined that the impurity in some ranitidine products increases over time and when stored at higher than room temperatures may result in consumer exposure to unacceptable levels of this impurity."[14]

---

[11] Health Products Regulatory Authority, Precautionary Pharmacy and Retail Level Recall of Several Batches of a Number of Ranitidine Medicines in Ireland (Sept. 23, 2019), https://www.hpra.ie/homepage/medicines/safety-notices/item?t=/precautionary-pharmacy-and-retail-level-recall-of-several-batches-of-a-number-of-ranitidine-medicines-in-ireland&id=d26b0c26-9782-6eee-9b55-ff00008c97d0 (last accessed Apr. 21, 2020).

[12] Food & Drug Admin., Laboratory Analysis of Ranitidine and Nizatidine Products (Nov. 1, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/laboratory-tests-ranitidine (last accessed Apr. 21, 2020).

[13] Food & Drug Admin., All Ranitidine Products (Zantac): Press Release – FDA Requests Removal (Apr. 1, 2020), https://www.fda.gov/safety/medical-product-safety-information/all-ranitidine-products-zantac-press-release-fda-requests-removal?utm_campaign=FDA%20MedWatch%20-%20All%20Ranitidine%20Products%20%28Zantac%29&utm_medium=email&utm_source=Eloqua (last accessed Apr. 21, 2020).

[14] *Id.*

### C. Plaintiff Was Harmed By Purchasing Or Being Prescribed And Consuming Defective Ranitidine Medications Manufactured By Defendant

17.     Plaintiff and the Class and Subclass were injured by the full purchase price of their Amneal ranitidine medications.  These medications are worthless, as they contain harmful levels of NDMA.   This is underscored by Amneal's voluntary recall of ranitidine medications "because of potential N-Nitrosodimethylamine (NDMA) amounts above levels established by the FDA," and its instruction to consumers to "stop using the product."[15]  As the medications expose users to NDMA well above the legal limit, the medications are not fit for human consumption.  Plaintiff is further entitled to statutory damages, damages for the injury sustained in consuming high levels of acutely-toxic NDMA, and for damages related to Defendant's conduct.

18.     Plaintiff brings this action on behalf of herself and the Class and Vermont Subclass for equitable relief and to recover damages and restitution for: (i) breach of the implied warranty of merchantability, (ii) violation of the Vermont Deceptive Trade Practices Act, 9 Vt. Stat. § 2451, *et seq.*, (iii) unjust enrichment, (iv) fraudulent concealment, (v) fraud, and (vi) conversion.

## PARTIES

19.     Plaintiff Renee Clark is a citizen of Vermont who resides in Fair Haven, Vermont. During all relevant time periods, Ms. Clark was prescribed and consumed ranitidine medications manufactured by Amneal.  Ms. Clark originally learned about the ranitidine defect through news sources reporting NDMA in ranitidine medications.  Each time Ms. Clark picked up her

---

[15] Food & Drug Admin., Amneal Pharmaceuticals, LLC. Issues Voluntary Nationwide Recall of Ranitidine Tablets, USP, 150mg and 300mg, and Ranitidine Syrup (Ranitidine Oral Solution, USP), 15 mg/mL, Due to Possible Presence of N-nitrosodimethylamine (NDMA) Impurity (Nov. 22, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/amneal-pharmaceuticals-llc-issues-voluntary-nationwide-recall-ranitidine-tablets-usp-150mg-and-300mg (last accessed Apr. 21, 2020).

ranitidine medications, she was required to make a co-payment of approximately $1.25. When purchasing her ranitidine medications manufactured by Defendant, Ms. Clark reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the ranitidine medication she consumed were properly manufactured and free from carcinogenic contaminants such as NDMA. Ms. Clark relied on these representations and warranties in deciding to consume her ranitidine medication from Amneal, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased her ranitidine medication manufactured by Defendant at all, or would have only been willing to pay a substantially reduced price for her ranitidine medication, if she had known that it was not, in fact, properly manufactured, and contained the carcinogenic impurity NDMA. Ms. Clark understood that each purchase involved a direct transaction between herself and Amneal because her medication came with packaging and other materials prepared by Amneal, including representations and warranties that her medication was properly manufactured, free from carcinogenic impurities such as NDMA, and safe for use.

20.     Defendant Amneal Pharmaceuticals, LLC is a Delaware corporation with a principal place of business at 400 Crossing Boulevard, Bridgewater Township, New Jersey 08807. Amneal conducts substantial business in the United States, including in the State of Vermont. Amneal has been engaged in the manufacturing of defective ranitidine throughout the United States, including in the State of Vermont.

## JURISDICTION AND VENUE

21.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100

members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

23.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this District.

## CLASS ALLEGATIONS

24.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased or were prescribed ranitidine-containing medications manufactured by Amneal (the "Class").  Specifically excluded from the Class are persons who made such purchase for the purpose of resale, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

25.     Plaintiff also seeks to represent a subclass of all Class members who purchased ranitidine-containing medications manufactured by Amneal in Vermont (the "Vermont Subclass").

26.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Vermont Subclass may be expanded or narrowed by amendment or amended complaint.

27.     **Numerosity.**  The members of the Class and Vermont Subclass are geographically dispersed throughout the United States and are so numerous that individual

joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of members in the Class and tens of thousands of members in the Vermont Subclass.  Although the precise number of members in the Class and Vermont Subclass is unknown to Plaintiff, the true number of members in the Class and Vermont Subclass is known by Defendant and may be determined through discovery.  Members of the Class and Vermont Subclass may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

28.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Vermont Subclass and predominate over any questions affecting only individual members of the Class and Vermont Subclass.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether the ranitidine medications manufactured by Defendant contain dangerously high levels of NDMA, thereby breaching the express and implied warranties made by Defendant and making the ranitidine-containing medications unfit for human consumption and therefore unfit for their intended purpose;

(b)     whether Defendant knew or should have known that the ranitidine-containing medications contained elevated levels of NDMA prior to selling the medications, thereby constituting fraud and/or fraudulent concealment;

(c)     whether Defendant has unlawfully converted money from Plaintiff and the Class and Vermont Subclass;

(d)     whether Defendant is liable to Plaintiff and the Class and Vermont Subclass

for unjust enrichment;

(e)     whether Defendant is liable to Plaintiff and the Class and Vermont Subclass for fraudulent concealment;

(f)     whether Defendant is liable to Plaintiff and the Vermont Subclass for violations of Vermont consumer-protection laws;

(h)     whether Defendant is liable to Plaintiff and the Class and Vermont Subclass for breaches of express and implied warranties;

(i)     whether Plaintiff and the Class and Vermont Subclass have sustained monetary loss and the proper measure of that loss;

(j)     whether Plaintiff and the Class and Vermont Subclass are entitled to declaratory and injunctive relief;

(k)     whether Plaintiff and the Class and Vermont Subclass are entitled to restitution and disgorgement from Defendant; and

(l)     whether the marketing, advertising, packaging, labeling, and other promotional materials for the ranitidine-containing medications are deceptive.

29.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class and Vermont Subclass in that Defendant mass marketed and sold defective ranitidine-based medications to consumers throughout the United States.  This defect was present in all of the ranitidine-containing medications manufactured, distributed, and sold by Defendant. Therefore, Defendant breached its express and implied warranties to Plaintiff and members of the Class and Vermont Subclass by manufacturing, distributing, and selling the defective ranitidine-containing medications.  Plaintiff's claims are typical in that they and members of the Class and Vermont Subclass were uniformly harmed in purchasing and consuming the defective

ranitidine-containing medications. Plaintiff's claims are further typical in that Defendant deceived Plaintiff in the very same manner as they deceived each member of the Class and Vermont Subclass. Further, there are no defenses available to Defendant that are unique to Plaintiff.

30. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class and Vermont Subclass. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Vermont Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class and Vermont Subclass.

31. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Class and Vermont Subclass are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class and Vermont Subclass, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Class and Vermont Subclass could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

32. In the alternative, the Class and Vermont Subclass may also be certified because:

(a)     the prosecution of separate actions by individual members of the Class and Vermont Subclass would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and Vermont Subclass that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual members of the Class and Vermont Subclass would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class and Vermont Subclass not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to members of the Class and Vermont Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class and Vermont Subclass as a whole.

## COUNT I
### Breach Of The Implied Warranty Of Merchantability
### (On Behalf Of The Class And Vermont Subclass)

33.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

34.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the Vermont Subclass against Defendant.

35.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the ranitidine medications (i) would not contain elevated levels of NDMA and (ii) are generally recognized as safe for human consumption.

36.     Defendant breached the warranty implied in the contract for the sale of the

defective ranitidine medications because they could not pass without objection in the trade under the contract description, the ranitidine medications were not of fair or average quality within the description, and the ranitidine medications were unfit for their intended and ordinary purpose because the ranitidine medications manufactured, distributed, and sold by Defendant were defective in that they contained elevated levels of carcinogenic and liver-toxic NDMA, and as such are not generally recognized as safe for human consumption. As a result, Plaintiff and members of the Class and Vermont Subclass did not receive the goods as impliedly warranted by Defendant to be merchantable.

37. Plaintiff and members of the Class and Vermont Subclass purchased the ranitidine medications in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

38. The ranitidine medications were not altered by Plaintiff or members of the Class and Vermont Subclass.

39. The ranitidine medications were defective when it left the exclusive control of Defendant.

40. Defendant knew that the ranitidine medications would be purchased and used without additional testing by Plaintiff and members of the Class and Vermont Subclass.

41. The ranitidine medications were defectively manufactured and unfit for their intended purpose, and Plaintiff and members of the Class and Vermont Subclass did not receive the goods as warranted.

42. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Class and Vermont Subclass have been injured and harmed because: (a) they would not have purchased the ranitidine medications on the same terms if they

knew that the ranitidine medications contained harmful levels of NDMA, and are not generally recognized as safe for human consumption; and (b) the ranitidine medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

43.     As a result of Defendant's breach of implied warranty, Plaintiff and each of the members of the Class and Vermont Subclass have been damaged in the amount of the purchase price of the ranitidine medications and any consequential damages resulting from the purchases.

**COUNT II**
**Violation Of Vermont Deceptive Trade Practices Act,**
***9 Vt. Stat. § 2451, et seq.***
**(On Behalf Of The Vermont Subclass)**

44.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45.     Plaintiff brings this claim individually and on behalf of the members of the proposed Vermont Subclass against Defendant.

46.     Vermont's Deceptive Trade Practices Act ("VDTPA"), 9 Vt. Stat. § 2451, *et seq.*, prohibits unfair or deceptive acts or practices in commerce.  9 Vt. Stat. § 2453(a).

47.     In its sale of goods throughout the State of Vermont, Defendant conducts commerce within the meaning and intendment of 9 Vt. Stat. § 2453(a).

48.     Plaintiff and members of the Vermont Subclass are consumers who purchased products from Defendant for their personal use.

49.     By the acts and conduct alleged herein, Defendant have engaged in unfair and deceptive acts and practices, which include, without limitation, misrepresenting that its ranitidine medication (i) would not contain dangerously high levels of NDMA and (ii) is generally recognized as safe for human consumption.

50.     The foregoing deceptive acts and practices were directed at consumers.

51.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of its ranitidine medication to induce consumers to purchase the same.

52.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of the VDTPA.

53.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the Vermont Subclass have sustained from having paid for and used Defendant's products.

54.     As a result of Defendant's violations, Plaintiff and members of the Vermont Subclass have suffered damages because: (a) they would not have purchased Defendant's ranitidine medication on the same terms if they knew that Defendant's ranitidine medication contained high levels of NDMA; and (b) Defendant's ranitidine medication does not have the characteristics, uses, benefits, or qualities as promised.

55.     On behalf of herself and other members of the Vermont Subclass, Plaintiff seeks to recover her actual damages, three times actual damages, and reasonable attorneys' fees.

**COUNT III**
**Unjust Enrichment**
**(On Behalf Of The Class And Vermont Subclass)**

56.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Vermont Subclass against Defendant.

58.     Plaintiff and the Class and Vermont Subclass conferred a benefit on Defendant in the form of monies paid to purchase Defendant's defective ranitidine medications.

59. Defendant voluntarily accepted and retained this benefit.

60. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for medications unfit for human use, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

## COUNT IV
### Fraudulent Concealment
### (On Behalf Of The Class and Vermont Subclass)

61. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Vermont Subclass against Defendant.

63. Defendant had a duty to disclose material facts to Plaintiff and the Class and Vermont Subclass given their relationship as contracting parties and intended users of the ranitidine-containing medications, including the ranitidine medications. Defendant also had a duty to disclose material facts to Plaintiff and the Class and Vermont Subclass, namely that they were in fact manufacturing, distributing, and selling harmful ranitidine-containing medications, including the ranitidine medications, containing NDMA that were unfit for human consumption. Such duty to disclose exists because Defendant had superior knowledge that the medications were defective and contained harmful levels of NDMA such that the transactions without the disclosure were rendered inherently unfair.

64. Defendant possessed knowledge of these material facts. In 2003, it was "proposed that elevated levels of NDMA in drinking water … may be associated with the drug

ranitidine."[16]  Likewise, in 2004, a study found the use of Zantac (the brand name for ranitidine) to be "related to the risk of bladder cancer."[17]  Furthermore, a 2016 study by Stanford University found that individuals who took ranitidine medications had "NDMA levels [in their urine] more than 400 times greater than what the FDA considers acceptable."[18]  During that time, Plaintiff and members of the Class and Vermont Subclass were using the ranitidine medications without knowing it contained dangerous levels of NDMA.

65.     Defendant failed to discharge their duty to disclose these materials facts.

66.     In so failing to disclose these material facts to Plaintiff and the Class and Vermont Subclass, Defendant intended to hide from Plaintiff and the Class and Vermont Subclass that they were purchasing and consuming ranitidine medications with harmful defects that were unfit for human use, and thus acted with scienter and/or an intent to defraud.

67.     Plaintiff and the Class and Vermont Subclass reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective ranitidine medications manufactured, distributed, and sold by Defendant had they known the ranitidine medications contained unsafe levels of NDMA.

68.     As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff and the Class and Vermont Subclass suffered damages in the amount of monies paid for the

---

[16] VALISURE, VALISURE CITIZEN PETITION ON RANITIDINE 4-5 (2019), https://www.valisure.com/wp-content/uploads/Valisure-Ranitidine-FDA-Citizen-Petition-v4.12.pdf (last accessed Apr. 21, 2020) (hereinafter "VALISURE PETITION").

[17] Dominque S. Michaud et al., *Peptic Ulcer Disease and the Risk of Bladder Cancer in a Prospective Study of Male Health Professionals*, 13 CANCER EPIDEMIOLOGY, BIOMARKERS & PREVENTION 250, 252 (2004) https://pdfs.semanticscholar.org/3eeb/c399404a2b100d90c6698bd4fc73a748864e.pdf(last accessed Apr. 21, 2020).

[18] Jonathan Lapook, *Potentially Dangerous Chemical Found in Popular Heartburn Pill Zantac*, CBS NEWS, Oct. 8, 2019, https://www.cbsnews.com/news/zantac-ndma-levels-potentially-dangerous-chemical-zantac-ranitidine-heartburn-pills-2019-10-08/ (last accessed Apr. 21, 2020).

defective ranitidine medications.

69.     As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

**COUNT V**
**Fraud**
**(On Behalf Of The Class and Vermont Subclass)**

70.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Vermont Subclass against Defendant.

72.     As discussed above, Defendant provided Plaintiff and members of the Class and Vermont Subclass with materially false or misleading information about their ranitidine-containing medications, including the ranitidine medications, manufactured by Defendant. Specifically, Defendant has marketed the ranitidine-containing medications as safe for human consumption. As indicated above, however, these representations are false and misleading as Defendant's ranitidine-containing medications contained elevated levels of NDMA.

73.     The misrepresentations and omissions of material fact made by Defendant, upon which Plaintiff and members of the Class and Vermont Subclass reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and members of the Class and Vermont Subclass to purchase the defective ranitidine medications.

74.     Defendant knew that the ranitidine containing medications were contaminated with this harmful impurity, but continued to manufacture it nonetheless. In 2003, it was "proposed that elevated levels of NDMA in drinking water … may be associated with the drug

ranitidine."[19]  Likewise, in 2004, a study found the use of Zantac (the brand name for ranitidine) to be "related to the risk of bladder cancer."[20]  Furthermore, a 2016 study by Stanford University found that individuals who took ranitidine medications had "NDMA levels [in their urine] more than 400 times greater than what the FDA considers acceptable."[21]  During that time, Plaintiff and members of the Class and Vermont Subclass were using the medications without knowing that they contained dangerous levels of NDMA.

75.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class and Vermont Subclass, who are entitled to damages and other legal and equitable relief as a result.

76.     As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

**COUNT VI**
**Conversion**
**(On Behalf Of The Class And Vermont Subclass)**

77.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Vermont Subclass against Defendant.

79.     Plaintiff and the Class and Vermont Subclass have an ownership right to the

---

[19] VALISURE PETITION at 4-5.

[20] Dominque S. Michaud et al., *Peptic Ulcer Disease and the Risk of Bladder Cancer in a Prospective Study of Male Health Professionals*, 13 CANCER EPIDEMIOLOGY, BIOMARKERS & PREVENTION 250, 252 (2004) https://pdfs.semanticscholar.org/3eeb/c399404a2b100d90c6698bd4fc73a748864e.pdf (last accessed Apr. 21, 2020).

[21] Jonathan Lapook, *Potentially Dangerous Chemical Found in Popular Heartburn Pill Zantac*, CBS NEWS, Oct. 8, 2019, https://www.cbsnews.com/news/zantac-ndma-levels-potentially-dangerous-chemical-zantac-ranitidine-heartburn-pills-2019-10-08/ (last accessed Apr. 21, 2020).

monies paid for the defective ranitidine manufactured by Defendant.

80.     Defendant has wrongly asserted dominion over the payments illegally diverted to them for the defective ranitidine medications.  Defendant has done so every time that Plaintiff and the Class and Vermont Subclass bought the ranitidine-containing medications.

81.     As a direct and proximate cause of Defendant's conversion, Plaintiff and the Class and Vermont Subclass suffered damages in the amount of the payments made for each time they were prescribed or paid money for the ranitidine medications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and the Vermont Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives of the Class and Vermont Subclass and Plaintiff's attorneys as Class Counsel;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff, the Class, and the Vermont Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class and Vermont Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of any

and all issues in this action so triable of right.

Dated:  April 30, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   _/s/ Andrew J. Obergfell_
　　　　Andrew J. Obergfell

Andrew J. Obergfell
888 Seventh Avenue
Vermont, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: jmarchese@bursor.com
　　　aobergfell@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*Pro Hac Vice Forthcoming*)
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (925) 407-2700
Email: swestcot@bursor.com

*Attorneys for Plaintiff*